

**ORDERED in the Southern District of Florida on March 30, 2019.**

_____
**Mindy A. Mora, Judge**
**United States Bankruptcy Court**

_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:                                          Case No.: 17-20010-MAM

SEAN RYAN BATCHELER,                            Chapter 13
     Debtor.
_____/

CHRISTOPHER GARCIA and GINNY     Adv. Proc. No. 17-01448-MAM
DAVIES,
     Plaintiffs,

v.

SEAN RYAN BATCHELER,
     Defendant.
_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]

**THIS MATTER** came before the Court for a hearing on November 7, 2018 at

10:00 a.m. (the "<u>Hearing</u>") upon _Defendant's Motion to Dismiss With Prejudice First_

_Amended Complaint Filed by Plaintiffs, Christopher Garcia and Ginny Davies_ (ECF

No. 30) (the "<u>Converted Motion</u>"), the *Supplement To Defendant's Motion to Dismiss With Prejudice First Amended Complaint Filed by Plaintiffs, Christopher Garcia and Ginny Davies and Request for Hearing* (the "<u>Supplement</u>") (ECF No. 74), the response [ECF No. 104] (the "<u>Response</u>")[1] to the Converted Motion filed by the above-captioned plaintiffs ("<u>Plaintiffs</u>"), the *Joint Stipulation of Undisputed Facts in Connection With Defendant's Motion to Dismiss With Prejudice First Amended Complaint  Filed by Plaintiffs, Christopher Garcia and Ginny Davies [ECF No. 30] Converted to Motion for Summary Judgment [ECF No. 98]* (ECF No. 108) (the "<u>Joint Stipulation</u>"), and *Defendant's Reply to Response to Motion to Defendant's Motion to Dismiss with Prejudice First Amended Complaint Filed by Plaintiffs, Christopher Garcia and Ginny Davies [ECF No. 30] Converted to Motion for Summary Judgement [ECF No. 98]* (ECF No. 112) (the "<u>Reply</u>"). Prior to the Hearing, the Court converted the Converted Motion from a motion to dismiss to a motion for summary judgment pursuant to Federal Rule of  Civil  Procedure 12(d), made applicable to bankruptcy proceedings  by  Federal Rule of Bankruptcy Procedure 7012. *See* ECF No. 98.

## BACKGROUND

I.    <u>Initial Summary Judgment Hearing and Briefing Order</u>

The issues raised in the above-captioned adversary proceeding, *Garcia et al. v. Batcheler,* Adv. Proc. No. 17-1448 (the "<u>Batcheler Proceeding</u>"), largely mirror those

---

[1] The title and format of Plaintiffs' responsive pleading was procedurally anomalous and appeared designed to structure the document as a motion for summary judgment. Because summary judgment was previously denied to Plaintiffs by prior order [ECF No. 100] (the "<u>Prior Summary Judgment Order</u>") and because the documents were filed on the deadline for a responsive pleading to the Converted Motion, the Court deemed DE 104 to be Plaintiffs' response to the Converted Motion.

raised in the companion case styled as *Garcia et al. v. Soden*, Adv. Proc. No. 17-1449 (the "Soden Proceeding", and collectively with the Batcheler Proceeding, the "Adversary Proceedings").[2] In the Converted Motion, each of the defendants in the two Adversary Proceedings, Sean Ryan Batcheler ("Batcheler") and Olivia Diane Soden ("Soden", and collectively with Batcheler, "Defendants"), sought summary judgment as to all four counts asserted in the amended complaint (ECF No. 24) (the "Amended Complaint").[3]

At the Hearing, the Court granted summary judgment in favor of Defendants as to Counts I, II, and III of the Amended Complaint. The Court reserved ruling as to Count IV and directed both parties to submit supplemental briefing on certain key aspects of Plaintiffs' claims under Count IV (ECF No.120, at ¶ 4 (the "Briefing Order").[4] The Court also ordered Plaintiffs (only) to submit additional briefing and

---

[2] For ease of reference, this Order cites to documents filed in Adv. Proc. No. 17-1448 unless otherwise indicated. The pleadings, documents, and orders in both Adversary Proceedings are typically identical except for very minor factual distinctions. When such distinctions are relevant, this Order cites to the document filed in the applicable Adversary Proceeding.

[3] Although the two Adversary Proceedings are not jointly administered, the issues and arguments presented are the same. Each of Defendants in the two adversary proceedings has filed an individual chapter 13 bankruptcy case in this Court. Defendant Batcheler's bankruptcy case is Case No. 17-20010, and Defendant Soden's bankruptcy case is Case No. 17-20013 (each individually, a "Bankruptcy Case", and collectively, the "Bankruptcy Cases"). Each of the named Defendants to the two Adversary Proceedings is therefore also an individual debtor before this Court.

[4] The issues included:

a. The effect, under California law, of Plaintiffs' failure, (i) within the 30-day period granted by the California Court (defined herein) to exercise the options set forth in the Statement of Decision (defined herein), or (ii) to seek a stay of the Statement of Decision pending appeal;

b. Whether the Florida Bar issued any additional rulings or findings from the Florida Bar Grievance Committee in connection with the complaint filed by Plaintiffs against Defendant Soden (which incorporated a direction to provide the court with such additional rulings or findings); and

documentation with detailed record references describing Defendants' specific individual actions resulting in "willful and malicious injury" to Plaintiffs or their property. *Id.*

II.    Procedural History

    The dispute giving rise to these Adversary Proceedings first came to light in the prepetition case captioned *Garcia et al. v. Mader Law Group, et al.*, Case No. CIVRS1307958 (the "California Case") filed in the Superior Court of California, San Bernardino County (the "California Court"). The Amended Complaint alleges that Plaintiffs engaged Defendants to provide legal representation in a potential loan modification for property located at 1415 W. 16th St., Upland, CA 91784 (the "Upland Property").[5] The allegations in the Amended Complaint largely follow (with a few notable exceptions discussed herein) the allegations set forth in the second amended complaint (the "California Complaint") filed in the California Case.[6]

    Because Plaintiffs sought legal assistance with the Upland Property immediately prior to a previously-scheduled trustee sale,[7] the proposed loan modification would have required a very short timeline. In the Amended Complaint, Plaintiffs allege that Defendants personally (individually) accepted the legal

---

    c. (For Plaintiffs only) the specific actions or inactions by Defendants giving rise to an injury under 11 U.S.C. § 543(a)(6). Briefing Order at ¶ 4.

[5] The Amended Complaint does not clarify which persons or parties actually signed the relevant engagement letter.

[6] *See* Amended Complaint, Exhibit A.

[7] The California Complaint acknowledges that the trustee sale was imminent because Plaintiffs made "sporadic" payments over a period of four years prior to the scheduled sale. *See* Amended Complaint. Exhibit A, at ¶ 4.

engagement,[8] but quickly terminated[9] the representation prior to the anticipated sale, causing mental anguish and other financial harm to Plaintiffs. Plaintiffs sought stay relief in this Court to continue litigation of the California Case against both Defendants, which this Court granted (the "Stay Relief Orders").[10]

The Stay Relief Orders permitted Plaintiffs to prosecute the California Case through a final, non-appealable judgment, but did not permit Plaintiffs to execute upon any monetary amount awarded in a judgment, absent further order of this Court. Pursuant to 28 U.S.C. §§ 1334(c)(1), 1334(c)(2), and 1452(b), the Court also abstained from liquidating any claims that Plaintiffs (as creditors in Defendants' Bankruptcy Cases) might have against Defendants.

On January 22, 2018, the California Court entered judgment by default in the California Case in favor of Plaintiffs and against Defendants (the "Default Judgment"). Amended Complaint, Exhibit C. The California Court also entered an "Order for Factual Determinations", which contains many legal conclusions designated as "factual" findings. Amended Complaint, Exhibit B. These findings are of little import to this Court's present decision, however, because the California Court vacated the Default Judgment pursuant to a Statement of Decision entered on April

---

[8] Plaintiffs' allegations regarding legal representation in the Amended Complaint are strikingly different from allegations in the California Complaint. The California Complaint alleges that Plaintiffs were represented by MLG, Defendants' prior employer. *See* Amended Complaint, Exhibit A, at ¶ 196.

[9] The basis for the termination is immaterial to this Court's present determination, but appears to relate to an alleged inability to obtain all necessary documentation from Davies and/or Garcia.

[10] The Stay Relief Orders are ECF No. 60 in the Batcheler Bankruptcy Case (Case No. 17-20010) and ECF No. 65 in the Soden Bankruptcy Case (Case No. 17-20013).

12, 2018 (the "Statement of Decision").[11]

The California Court's Statement of Decision vacated the Default Judgment, restricted the potential award of damages, and offered Plaintiffs two options:

1)      File an amended complaint within 30 days of April 12, 2018, and plead the amount of damages claimed in the 1st-13th and 16th-19th causes of action in the California Case, or

2)      Within 30 days, accept the judgment as modified by the Statement of Decision.

If Plaintiffs chose Option 1, the Statement of Decision required Plaintiffs to serve an amended complaint and damage demand on Defendants, who then would have had the statutory period to file a responsive pleading. If Plaintiffs accepted Option 2, the Statement of Decision clarified that the modification set forth therein was based solely on the 14th/IIED cause of action and the amounts, as supported by the submitted evidence, and damages listed in the Statement of Damages, which provided a grand total judgment of $3,458,410.00.  Pursuant to the Statement of Decision, upon entry of a new (modified) judgment (the "Proposed Modified Judgment"), Defendants were authorized to move for a new trial pursuant to applicable state law, including *Don v. Cruz*, 131 Cal.App. 3d 695 (Cal. 1982).

Plaintiffs elected instead to take no action at all. As a result, as of the date of this Order, no final judgment has been entered liquidating any potential claim asserted by Plaintiffs in Defendants' Bankruptcy Cases. Both Plaintiffs and

---

[11] The Statement of Decision may be found at ECF No. 104-6 in Adv. Proc. No. 17-1448, pp. 58-62.

Defendants appealed the Statement of Decision to the Court of Appeal of California, 4th District.[12]

All these events call into question Plaintiffs' status as creditors in Defendants' Bankruptcy Cases and, ultimately, Plaintiffs' standing to bring the Adversary Proceedings. The question of creditor status has been further muddied in these Adversary Proceedings by Plaintiffs' insistence upon repeatedly pleading allegations against Defendants likely based upon the actions of Mader Law Group, LLC ("MLG"), Defendants' prior employer and co-defendant in the California Case.

Plaintiffs relied heavily upon facts alleged in the California Complaint as support for allegations in the Amended Complaint. Unfortunately, many key allegations in the Amended Complaint are inconsistent with allegations in the California Complaint. One of the most striking differences between the various iterations of Plaintiffs' allegations is the inclusion or omission of MLG as the alleged primary actor who caused Plaintiffs' injuries. This variance between the Amended Complaint and the California Complaint, when coupled with Plaintiffs' conflation of MLG (a corporate entity) with Defendants (as individual debtors), has created a morass of conflicting factual and legal allegations for the Court to sift through in determining whether summary judgment is appropriate.

---

[12] Plaintiffs have not informed the Court of any stay pending appeal entered by the California Court. Defendants take the position that any stay pending appeal imposed by Cal.C.C.P. § 916(a) did not stay the implementation of the Statement of Decision. *See* DE 124 in Adv. Proc. No. 17-1448, ¶¶ 16-20. Because Plaintiffs failed to address issuance of a stay in their supplemental briefing (as specifically requested by the Court in the Briefing Order), and the Statement of Decision clearly required Plaintiffs to elect an option within a thirty-day deadline, the Court declines to opine regarding the operation of Cal.C.C.P. § 916(a).

To avoid further confusion and properly focus the Court's inquiry upon Defendants in an individual capacity, rather than as employees or alleged agents of MLG, the Briefing Order explicitly directed Plaintiffs to submit a succinct statement (the "Statement") identifying the specific individual actions or inactions by Defendant Batcheler and Defendant Soden purportedly giving rise to a willful and malicious injury to Plaintiffs or their property. In sum, the Briefing Order directed the parties to submit all pertinent factual evidence and legal argument regarding three interrelated aspects of Plaintiffs' allegations under 11 U.S.C. § 523(a)(6):

1) The present status of the California Case (including any appeals), and the preclusive impact (if any) of findings, orders, or judgments entered in that case;

2) Any additional rulings or findings from the Florida Bar Grievance Committee in connection with a bar complaint filed by Plaintiffs against Defendant Soden;[13] and

---

[13] The record in the Soden Proceeding includes a full transcript of the Florida Bar Grievance Committee's proceedings on February 2, 2016 and two subsequent letters issued on February 16, 2016 by Jodi Anderson Thompson, counsel to The Florida Bar (the "Grievance Reports"). The first letter, sent to Defendant Soden, states in relevant part:

> Pursuant to Rule 3-7.4(k), this document serves as a Letter Report of No Probable Cause Finding. On the basis of a diligent and impartial analysis of all the information available, on February 2, 2016, the grievance committee found no probable cause for further disciplinary proceedings in this matter. … This matter is now closed.

The second letter, sent to Plaintiff Christopher Garcia, contains an identical statement:

> Pursuant to Rule 3-7.4(k), this document serves as a Letter Report of No Probable Cause Finding. On the basis of a diligent and impartial analysis of all the information available, on February 2, 2016 the grievance committee found no probable cause for further disciplinary proceedings in this matter. … This case is now closed.

Adv. Proc. No. 17-1449, ECF No. 111, p. 182-83. Plaintiffs did not submit any additional findings of the Grievance Committee.

8

3) What specific actions or inactions Plaintiffs allege Defendant Batcheler and Defendant Soden performed *individually* resulting in a "willful and malicious injury" upon Plaintiffs or their property.[14]

The parties timely submitted memoranda and supporting documents (ECF No. 124, "Defendants' Memorandum" and ECF No. 125, "Plaintiffs' Memorandum") and the Court took the matter under advisement. After reviewing all relevant pleadings, including (but not limited to) the Amended Complaint, Converted Motion, Supplement, Response, Joint Stipulation, Reply, all supplemental briefing submitted pursuant to the Briefing Order, and all exhibits to each of these respective filings, the Court concludes that: (1) there is no genuine dispute as to the material facts relevant to Count IV and (2) both Defendants are entitled to summary judgment as a matter of law.

## ANALYSIS AND CONCLUSIONS OF LAW

I.   Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I).

II.  Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable to

---

[14] For this issue, the Court directed Plaintiffs to specify with precision the portion of the documents, transcripts or affidavits previously filed with the court that Plaintiffs relied upon to support their Statement and permitted Plaintiffs to file additional documentary or testimonial (by affidavit or declaration) support. The Court instructed Plaintiffs to identify the portion of the relevant supporting documents, transcripts, or affidavits identified in the Statement by docket entry number, exhibit number, page number, and paragraph or line (as applicable).

bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "When deciding summary judgment, the Court may look to materials in the record such as depositions, documents, affidavits or declarations, and admissions." *Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins. Co.*, 981 F. Supp. 2d 1302, 1305-06 (S.D. Fla. 2013) (*citing* Fed. R. Civ. P. 56(c). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Diaz v. Amerijet Int'l, Inc.*, 872 F. Supp. 2d 1365, 1368 (S.D. Fla. 2012) (*quoting Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997)) (internal quotation marks omitted); *see also Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013). Finally, the moving party "always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted); *see also Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314-15 (11th Cir. 2011) (quoting same).

III.    "Alter Ego" Theories

Most, if not all, of Plaintiffs' allegations regarding Defendants' liability (and any related potential nondischargeability) are couched in a theory of "alter ego" as

to MLG. Specifically, Plaintiffs alleged that (a) Defendants Batcheler and Soden are the alter ego of MLG and (b) any liability due to MLG's actions should be attributed to Defendants by "piercing the corporate veil" of MLG.

"Under Florida law, an alter ego claim is an action to impose liability on a corporation's principals or related entities where a corporation was organized or used to mislead creditors or to perpetrate a fraud upon them."[15] *In re Xenerga, Inc.,* 449 B.R. 594, 598 (Bankr. M.D. Fla. 2011) (internal quotation marks and citation omitted). When appropriate, Florida courts will pierce the corporate veil upon finding by a preponderance of the evidence that:

1) [a] shareholder dominated and controlled the corporation to such an extent that the corporation's existence, was in fact nonexistent and the shareholders were in fact alter egos of the corporation;
2) the corporate form was used fraudulently or for an improper purpose; and
3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Id*. The party seeking to pierce the corporate veil bears the burden of proof. *Hillsborough Holdings,* 166 B.R. at 468.

For obvious reasons, proof of ownership of the corporation in question is a fundamental prerequisite to a finding of "alter ego" liability. *See generally S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) (discussing application of alter ego doctrine under California law), opinion amended on denial of reh'g sub nom, *Sec. &*

---

[15] To the extent that California law could theoretically govern any alter ego claim asserted by Plaintiffs, California alter ego law is functionally the same as Florida veil-piercing law as to the requirement of ownership.  Therefore, this Court does not need to undertake a choice of law analysis. *C.f. Hillsborough Holdings Corp. v. Celotex Corp. (In re Hillsborough Holdings Corp.),* 166 B.R. 461, 468 (Bankr. M.D. Fla.), aff'd, 176 B.R. 223 (M.D. Fla. 1994) (discussing choice of law in the context of alter ego claims and finding that where no discernible difference exists, choice of law is insignificant).

*Exch. Comm'n v. Hickey*, 335 F.3d 834 (9th Cir. 2003); *Madison Cty. Commc'ns Dist. v. Centurylink, Inc.*, No. CV 12–J–1768–NE, 2012 WL 6685672, at *4 (N.D. Ala. Dec. 20, 1012) (citing *Hickey* with approval and discussing fundamental theories of veil-piercing).

Plaintiffs have not provided the Court with credible evidence demonstrating that Defendants have or ever had an ownership interest in MLG. Plaintiffs failed to submit any of the typical indicia of corporate ownership, i.e., entity records or filings with the Florida Department of State indicating that Defendants are the directors, officers, or managing members of MLG.[16] By contrast, Defendants have submitted personal income tax filings and business records conclusively demonstrating that they were solely employees of MLG, and did not hold an ownership interest in MLG.

Eric Mader ("Mader"), who all parties agree is an owner of MLG,[17] testified that Batcheler worked for him as an employee.[18] Batcheler likewise testified that he acted as Eric Mader's employee and provided tax records supporting that claim.[19] Soden submitted copies of her employee handbook receipt form, a standard employee

---

[16] In Florida, documents of this nature are public record and therefore easily accessible to any interested party. In addition, all parties have had ample opportunity to conduct discovery and supplement the record.

[17] *See* ECF No. 104-4 in Adv. Proc. No. 17-1448, p. 72 (Transcript of Eric Mader at 8:2-25) (describing Eric Mader's role as the Managing Partner and founder of MLG).

[18] *See* ECF No. 104-4 in Adv. Proc. No. 17-1448, p. 102 (Transcript of Eric Mader at 2:15-3:4) (stating Batcheler worked for Eric Mader); ECF No. 34, Adv. Proc. No. 17-1449, p. 115 (Transcript of Eric Mader at 18:1-17) (stating Batcheler and other persons working with Batcheler were employees of MLG).

[19] *See* ECF No. 104-3 in Adv. Proc. No. 17-1448, p. 121 (Transcript of Sean Batcheler at 6:9-15); ECF No. 112 in Adv. Proc. No. 17-1448, p. 130-35 (the "Batcheler Affidavit"); ECF No. 104-2 in Adv. Proc. No. 17-1448, pp. 21-105.

nondisclosure agreement, and tax forms indicating her employee status.[20] Soden also testified before the Grievance Committee as to her status as an employee of MLG and submitted an affidavit providing further detail as to her employment status and lack of ownership interest in MLG.[21] Although Plaintiffs have repeatedly contended that Batcheler's role as a signatory to MLG bank accounts [22] elevates his status to an "owner" of MLG, signatory authority as to one (or more) bank account(s) does not create a presumption as to ownership of a limited liability company providing legal services in the face of substantial documentary and testamentary evidence to the contrary.

Focusing on legal representation specifically,[23] Plaintiffs have failed to provide the Court with citations to an engagement letter that clearly identifies Defendants as individual parties to the alleged contractual relationship between Plaintiffs and MLG.[24] Defendant Soden testified that although she is a licensed attorney, MLG

---

[20] ECF No. 31, Adv. Proc. No. 17-1449, pp. 171-189.

[21] *See* ECF No. 111 in Adv. Proc. No. 17-1449, pp. 18-125 (Grievance Proceeding Transcript of Soden) (the "Soden Transcript"), at 22:2-28:1); ECF No. 71-1 in Adv. Proc. No. 17-1449, at pp. 1-5, 76-86.

[22] ECF No. 104-7 in Adv. Proc. No. 17-1448, pp. 61-65 are copies of signature cards for Suntrust Bank, N.A. that identify Batcheler as a "Manager" of MLG. ECF No. 104-7, p. 91 includes an abbreviated reference to "Sean" as a manager or officer. These documents were not authenticated. As a result, the Court views the probative value of these documents as negligible in the face of other evidence submitted by Defendants.

[23] The original complaint(s) filed in each of the Adversary Proceedings included allegations stating that Plaintiffs hired MLG to perform legal services, which was consistent with allegations made in the California Complaint. Those allegations, however, were replaced in the Amended Complaint with allegations that Plaintiffs hired only Defendants. Compare ECF No. 1 in Adv. Proc. No. 17-1448, paragraphs 19 & 20 with ECF No. 24 in Adv. Proc. No. 17-1448, paragraph 20; see also ECF No. 24 in Adv. Proc. No. 17-1448, Exhibit A, at ¶¶ 38-39.

[24] Because Plaintiffs have cumulatively submitted thousands of pages of documents as exhibits to various pleadings, the Briefing Order specifically directed Plaintiffs to clarify any record references supporting allegations of "willful" and "malicious" conduct by Defendants in an individual capacity. In

hired her strictly as a loan processor. Soden further testified that she was not permitted to accept any engagement on behalf of MLG, nor was she able to personally represent Plaintiffs.[25]

Defendant Batcheler averred that he is a non-attorney who is unable to engage in the practice of law and did not do so with respect to Plaintiffs during his tenure with MLG.[26] Plaintiffs have not submitted competent evidence contradicting Batcheler's and Soden's sworn statements. The Court concludes that Plaintiffs have failed to demonstrate that Defendants held an ownership interest in MLG or that they "dominated and controlled" MLG. *Xenerga, Inc.,* 449 B.R. at 598.[27] Based upon the record evidence submitted, the Court also finds that neither Defendant agreed in an individual capacity to represent Plaintiffs in litigation regarding the Upland Property. *C.f.* Rules Regulating the Florida Bar, R. 4-5(c).

Having concluded that Defendants were not owners of MLG and did not personally enter into a retention agreement with Plaintiffs, this Court need not pursue further inquiry into Plaintiffs' allegations based upon theories of alter ego or

---

addition, the Prior Summary Judgment Order indicated to Plaintiffs the necessity of providing the Court with appropriate documentation to support any factual finding regarding a business relationship between Defendants, individually, and Plaintiffs.

[25] Soden Transcript, at 16:22-19:15 (describing employment status as a non-attorney loan processor), 25:20-21 ("No, I never met with a client and I wasn't on any retainer agreement.").

[26] *See generally* Batcheler Affidavit, at ¶¶ 2-34 (describing employment with MLG and lack of ownership interest in MLG). Applicable Florida law prohibits non-attorneys from holding a partnership interest in a law firm. Rules Regulating the Florida Bar, R. 4-5(c) Partnership with Nonlawyer ("A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.").

[27] *See* § V.C., *infra.*

veil-piercing. *Hickey*, 322 F.3d at 1128. Because neither Defendant held an ownership interest in MLG, neither defendant could act as MLG's "alter ego". Any argument regarding Defendants' purported individual liability for the acts of MLG is without merit.[28]

IV.    Res Judicata, Collateral Estoppel, and the Rooker-Feldman Doctrine

Multiple doctrines prevent this Court from determining issues previously decided by a state forum of competent jurisdiction. "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in **judicial or administrative proceedings** if the party against whom the prior decision is asserted had a full and fair opportunity to litigate that issue in an earlier case." *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir. 1993) (emphasis added and internal quotation omitted).

Under Florida law, the following elements must be met for collateral estoppel to apply: "(1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case."

---

[28] At the Hearing, the Court clarified on the record that neither Defendant engaged in a relationship with Plaintiffs in an individual capacity, thereby invaliding Plaintiffs' claims under 11 U.S.C. § 523(a)(2) and (4). *See* Transcript of November 7, 2018 Hearing, ECF No. 128 in Adv. Proc. No. 17-1448, at 23:1-26:11, 30:18-31:15.

*St. Laurent*, 991 F.2d at 676. Collateral estoppel principles apply in nondischargeability proceedings under 11 U.S.C. § 523(a). *Id.* at 675 (citing *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991)). Administrative proceedings may provide a final determination on the merits of issues litigated within that forum. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) ("We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality."); *see also St. Laurent*, 991 F.2d at 675 (noting that collateral estoppel applies in administrative proceedings).

Similarly, "the Rooker–Feldman doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts." *Siegel v. Lepore*, 234 F.3d 1163, 1172 (11th Cir. 2000). The doctrine extends to claims that are "inextricably intertwined" with a state court judgment. *Id.*

Each of these doctrines has potential application to the Adversary Proceedings. Two proceedings are particularly relevant to this Court's analysis of collateral estoppel principles and the Rooker-Feldman doctrine: (i) the Grievance Committee proceedings (the "<u>Grievance Proceedings</u>") involving Defendant Soden and (ii) the California Case (including any appeals).

A.    <u>Grievance Proceedings</u>

The Amended Complaint alleges that Plaintiffs engaged Defendants Batcheler and Soden (not MLG) to represent their legal interests with respect to the Upland

16

Property.[29] This allegation is belied by record evidence[30] and Plaintiffs have not submitted any conflicting proof of retention.[31] The Court previously determined that Plaintiffs did not retain either Defendant individually as counsel in the Upland Action.

To the extent, nonetheless, that Plaintiffs could reasonably allege—despite the Court's findings in this Order—that they retained Defendant Soden to represent their interests in the Upland Action as their counsel, this Court is persuaded that further litigation initiated by Plaintiffs regarding Defendant Soden's conduct as an attorney is unwarranted.

The Grievance Committee's Letter Report to Defendant Soden specifically states that (i) Defendant Soden's conduct did not rise to the level of an ethical violation and (ii) no probable cause existed for further disciplinary proceedings. Adv. Proc. No. 17-1449, ECF No. 111, p. 182; *see also* Letter Report to Plaintiff Garcia, ECF No. 111, p. 183. Plaintiffs have failed to submit any evidence of further proceedings or additional findings by the Grievance Committee.

In order for collateral estoppel and the Rooker-Feldman doctrine to apply to the Grievance Report, the Court must find that (i) all four elements of collateral

---

[29] Exhibit A to the Amended Complaint directly contradicts this allegation, as it contains numerous allegations describing retention of MLG as legal counsel to Plaintiffs. The record of the Adversary Proceedings as a whole therefore indicates that Plaintiffs' allegations regarding retention have morphed to suit their pleading needs rather than as a result of unearthing new or additional facts through discovery.

[30] *See, e.g.*, ECF No. 104-3 in Adv. Proc. 17-1448, at p.25 (Global Client Solutions letter, dated January 27, 2015, describing debt settlement program "administered by Mader Law Group, LLC").

[31] *See* Transcript of November 7, 2018 Hearing, ECF No. 128 in Adv. Proc. No. 17-1448, at 23:1-26:11, 30:18-31:15.

estoppel are present, and (ii) that the Grievance Report operates as final adjudication upon the merits of Plaintiffs' claims of attorney misconduct. *St. Laurent*, 991 F.2d at 676; *Siegel,* 234 F.3d at 1172. The first three elements of collateral estoppel are easily satisfied. First, the issue of Soden's alleged conduct as an attorney was precisely the issue at stake in the Grievance Proceeding. Second, this issue was investigated pursuant to Florida Bar guidelines, thereby satisfying the "actually litigated" requirement of collateral estoppel. Third, the Grievance Committee's determination of the issue was a critical and necessary part of the decision set forth in the Grievance Reports. The fourth element, however, is problematic. It is unclear whether the standard of proof in the Grievance Proceeding was at least as stringent as the standard of proof in the Adversary Proceedings. *See generally* Rules Regulating the Florida Bar, Chapter 3 (describing grievance proceedings); *Florida Bar v. Vining*, 707 So.2d 670, 672-73 (Fla. 1998) (describing referee's consideration of evidence in disciplinary proceedings).

In addition, precedential case law indicates that the Grievance Report does not suffice as a final adjudication upon the merits. *Florida Bar v. Trazenfeld*, 833 So.2d 734, 738 (Fla. 2002) (finding res judicata did not apply to prior grievance proceeding). For these reasons, the Court concludes that collateral estoppel and the Rooker-Feldman doctrine are not automatically invoked by the mere existence of the Grievance Reports. This conclusion does not mean, however, that the Grievance Reports are of no probative value whatsoever to this Court's analysis.

The Grievance Reports unequivocally state that the Grievance Committee

18

found no probable cause for further disciplinary proceedings. Based upon this finding, combined with (a) Plaintiffs' failure to provide further findings by the Grievance Committee and (b) the absence of factual allegations in the Adversary Proceedings that are *not* predicated upon theories of alter ego, the Court concludes that no material facts exist to support Plaintiffs' claims of attorney malfeasance as to Defendant Soden.

In reaching this conclusion, the Court is mindful that The Florida Bar functions as an arm of the Florida Supreme Court in making determinations regarding attorney discipline. *Jilani v. FPL Group, Inc.,* No. 09-23659-CIV, 2010 WL 11606117, at *2 (S.D. Fla. June 14, 2010) ("Florida's Constitution grants to the Supreme Court of Florida exclusive jurisdiction to regulate admission and impose discipline for violating the Bar's rules. … The Florida Bar is an official arm of the Florida Supreme Court in the administration and discipline of attorneys.") (internal citations omitted); *Mason v. Florida Bar*, No. 6:05-CV-627-28JGG, 2005 WL 3747383, at *3 (M.D. Fla. Dec. 16, 2005) (Florida Bar disciplinary proceedings are judicial in nature). As a result, courts within Florida (including the Florida Supreme Court) typically afford great deference to the conclusions of any disciplinary committee convened on behalf of The Florida Bar. *See*, e.g., *Vining*, 707 So.2d at 673.

Therefore, although collateral estoppel and the Rooker-Feldman doctrine may not be implicated by the Grievance Reports, the Court nevertheless finds the Grievance Reports are instructive as to the dearth of available evidence regarding Soden's alleged attorney misconduct.

19

B.    <u>California Case</u>

The California Complaint included allegations of fraud. *See, e.g.*, Amended Complaint, Exhibit A, ¶¶ 80-89. The preclusive impact of the California Court's judgment has been of paramount interest to this Court because entry of a final judgment by the California Court would limit this Court's reconsideration of the same factual issues, including allegations of fraudulent conduct. *See generally Thomas v. Loveless (In re Thomas),* 288 Fed. Appx. 547 (11th Cir. 2008) (discussing application of collateral estoppel to nondischargeability claim). Factual findings of fraudulent conduct, in turn, would impact the Court's evaluation of nondischargeability pursuant to 11 U.S.C. § 523(a)(6) to the extent that the fraudulent conduct could reasonably be construed as evidence of willfulness or malice. *Id.* Under the unusual set of facts presented here, however, the proceedings to date in the California Case have not provided conclusive factual findings as to either Defendant.

The Statement of Decision vacated the California Court's prior entry of judgment. *See* Statement of Decision, at pp. 2-3 (ECF No. 104-6 at pp. 59-60). This vacatur prevented any accompanying factual determinations from becoming final, thereby eliminating any potential preclusive impact of the findings unless and until the judgment became final according to the terms of the Statement of Decision. Statement of Decision, at p.2 ("The Court then grants the motion to set aside the Default Judgment under CCP§473 (d), as it exceeded the amount in the pleadings and statement of damages and is void."); s*ee US v. Sigma Int'l, Inc.,* 300 F.3d 1278, 1280 (11th Cir. 2002) (referencing prior vacated opinions and stating that such

20

opinions "have no legal effect whatever"); *Grain Dealers Mut. Ins. Co., v. Marino*, 200 Cal. App.3d 1083, 1088-89 (Ca. Ct. App. 1998) (quoting Restatement (Second) of Judgments § 16 and finding Restatement to be consistent with California law).

Because the Statement of Decision offered Plaintiffs a 30-day period to accept the judgment as modified (the "Conditional Judgment") or, alternatively, to file a new complaint, the Court directed the parties to submit briefing upon the legal effect of Plaintiffs' failure to exercise either option. Having considered Plaintiffs' Memorandum, Defendants' Memorandum, and having reviewed applicable caselaw, the Court concludes that Plaintiffs' election to appeal the Statement of Decision prevents Plaintiffs from claiming any portion of the modified judgment (and its accompanying order for factual determinations) as preclusive with respect to any facts relevant to this Court's determination of nondischargeability in the Adversary Proceedings. *Dell'Oca v. Bank of New York Trust Co.,* N.A., 71 Cal. Rptr. 3d 737, 751 (1st Dist. Cal. Ct. App. 2008); *Swett v. Gray*, 141 Cal. 63, 70 (Cal. 1903) (plaintiff's election to appeal order, rather than accept modified judgment set forth therein, prevented later acceptance of modified judgment); *Rainbow Island Prods., Ltd. v. Leong,* 44 Haw. 134, 138 (Haw. 1960) (lack of acceptance of remittur rendered it defunct); *Walker v. Quinn*, 133 S.E. 444, 450-51 (SC 1926) (Townsend, J., dissenting and citing *Swett*).

Accordingly, the Court finds and concludes that principles of collateral estoppel and the Rooker-Feldman doctrine are not invoked by entry of the Default Judgment and its attendant factual findings because (i) the Statement of Decision vacated the

Default Judgment and (ii) Plaintiffs did not elect the option presented by the Statement of Decision to accept the Modified Judgment.

V.    11 U.S.C. § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code ("§ 523(a)(6)") provides that the Debtor may not be discharged from any debt arising from willful and malicious injury by the Debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6). A bankruptcy court's determination that an injury was "willful and malicious" within the meaning of § 523(a)(6) is a factual finding. *Kane v. Stewart Tilghman Fox & Bianchi PA (In re Kane)*, 755 F.3d 1285, 1293 (11th Cir. 2014). The party seeking nondischargeability pursuant to § 523(a)(6) must establish both elements—willfulness and maliciousness—by a preponderance of the evidence. *Id.; Avadian Credit Union v. Hamm (In re Hamm)*, No. 15-01826-TOM 7, 2016 WL 3748796, at *3-4 (Bankr. N.D. Ala. July 7, 2016); *Figueroa v. Barreto (In re Barreto)*, 514 B.R. 702, 713-14 (Bankr. S.D. Fla. 2013).

A.    "Willful" Prong

Section 523(a)(6) requires a deliberate or intentional injury. *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1163-65 (11th Cir. 1995). For an action to be "willful" under § 523(a)(6), the actor must intend "more than merely the act that results in injury." *Id.* at 1164. The willfulness prong under § 523(a)(6) is therefore satisfied only when the debtor "commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Maxfield v. Jennings (In re Jennings)*,

670 F.3d 1329, 1334 (11th Cir. 2012) (internal quotation marks and citation omitted).

B.    "Malicious" Prong

In the context of § 523(a)(6), "malicious" means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Id.* (internal quotation and citation omitted). Because a showing of specific intent to harm another is not required, this element follows a slightly less stringent standard than willfulness. *Id.* Although "[r]ecklessly or negligently inflicted injuries are not excepted from discharge", proof of malice may be implied or constructive. *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998); *Walker*, 48 F.3d at 1164; *Lee v. Ikner, In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989), *abrogated on other grounds*, *Grogan*, 498 U.S. at 291.

C.    523(a)(6) Analysis

The Court has already concluded that: (i) Plaintiffs engaged MLG, not Defendants individually, to represent their interests in the Upland Property litigation, (ii) Defendants are not the alter egos of MLG because they do not possess an ownership interest in MLG, and (iii) MLG's liability for its actions or inactions may not be imputed to Defendants. The only potential source for liability in the Adversary Proceedings is therefore the actions performed by Defendants in an individual capacity. No material question of fact exists regarding the complete absence of actions undertaken by Defendants individually that would support a claim for willful and malicious injury.

Even if all allegations in the Amended Complaint are accepted as true—despite

glaring factual anomalies and conspicuous inconsistencies between the allegations in the California Complaint and the Amended Complaint—all acts performed by either Defendant were undertaken within the scope of their employment. Plaintiffs have not identified any actions by Defendants *individually* that may reasonably be construed–as a matter of law–as "willful" and "malicious" within the meaning of Section 523(a)(6). *See Walker*, 48 F.3d at 1164-65 (contractor's failure to procure worker's compensation insurance was insufficient to support grant of summary judgment as to non-dischargeability); *Herman v. Remick (In re Remick)*, 96 B.R. 935, 942-43 (Bankr. W.D. Mo. 1987) (co-debtor's lack of actual knowledge precluded entry of summary judgment).

In the Briefing Order, the Court specifically directed Plaintiffs to provide precise record references (by page and line) indicating evidence supporting Plaintiffs' allegations that Defendants acted in an individual capacity, rather than as mere employees. Briefing Order, at ¶ 4(c). Plaintiffs' Memorandum identifies the following page references:[32]

- ECF No. 104-1, pp. 9-10, 13, 15-28, 45-65, 75;

- ECF No. 104-2 pp. 115-121;

- ECF No. 104-3, pp. 3-9, 36 97-121;

- ECF No. 104-4, p. 49;

---

[32] All references are within Adv. Proc. No. 17-1448. For ease of reference, the Court has combined duplicative references where the page numbers overlap, i.e. reference to ECF No. 104-7, p. 62 is not included as a separate reference because it is subsumed within the reference to ECF No. 104-7, pp. 61-63. The Court's analysis included all relevant pages listed above (plus all other documents filed as exhibits), regardless of how each page was individually cited.

- ECF No. 104-5, pp. 78-88;

- ECF No. 104-6, p. 62; and

- ECF No. 104-7, pp. 50-54, 61-63, 88-89.

In addition, Plaintiffs' Memorandum supplies several other less clear citations.[33] The Court has spent considerable time reviewing each discernible citation in Plaintiffs' Memorandum, as well as undertaking its own review of the record of the Adversary Proceedings and Bankruptcy Cases as a whole. Having completed this analysis, the Court finds that (i) Defendants have met their burden of demonstrating the absence of a genuine issue of material fact and (ii) Plaintiffs have failed to show that either Defendant engaged in any actions in an individual capacity resulting in harm to Plaintiffs.

Taking the analysis one step further, even if Plaintiffs could prove that Defendants, not MLG, received payment from Plaintiff Davies for legal services (which is belied by record evidence), Count IV of the Amended Complaint still fails as a matter of law. The record reflects that all charges for obligations payable by Plaintiffs to MLG were reversed and Plaintiffs retained ownership of the Upland Property. Joint Stipulation, ¶¶ 5-12; ECF No. 30 in Adv. Proc. No. 17-1448 at p. 85; ECF No. 72-1 in Adv. Proc. No. 17-1448 at pp. 43-47. The Court therefore concludes that no injury "substantially certain to occur" resulted from Defendants' actions or

---

[33]  *See, e.g.*, Plaintiffs' Memorandum, at p. 7, § A ("See attached Exhibit 140 and Exhibit 147 attached."). No exhibits are attached to Plaintiffs' Memorandum. Plaintiffs filed approximately 800 pages of documents as exhibits to the Response, many of which appear to have been previously filed as exhibits in another proceeding. The Court's review of the entire record indicates that many of the improper citations in Plaintiffs' Memorandum are likely citations to these other exhibits. To the extent feasible, the Court attempted to decipher all citations in Plaintiffs' Memorandum despite the lack of clarity, and has reviewed all pertinent portions of the record.

inactions because Plaintiffs did not suffer any damages. *Walker*, 48 F.3d at 1165-66. The Court further holds that, to the extent that either Defendant could somehow be construed as the "actor" inflicting the alleged harm, the complete refund of all funds paid by Plaintiff Davies clearly demonstrates an absence of malice as to either Defendant.

Finally, but importantly, the Court determines that Plaintiffs have failed to demonstrate, as a matter of law, the existence of any injury within the scope of § 526(a)(6). The Joint Stipulation acknowledges that Plaintiffs received the loan modification that they originally sought, and they still reside in the Upland Property. Joint Stipulation ¶¶ 11-12. Record testimony has clarified that all moneys paid to MLG were reversed. ECF No. 30 in Adv. Proc. No. 17-1448 at p. 85; ECF No. 72-1 in Adv. Proc. No. 17-1448 at pp. 43-47. Any other alleged harm, even if proven (which the Court does not find), is sufficiently attenuated that such harm could not, as a matter of law, be viewed as substantially certain to occur. *Walker*, 48 F.3d at 1165-66.

Accordingly, no material question of fact exists regarding whether Defendants' actions gave rise to willful and malicious injury. They did not. Consequently, Plaintiffs have failed to prove, as a matter of law, the existence an injury inflicted by either Defendant within the scope of § 523(a)(6). The elements of § 523(a)(6) are not satisfied, and Court IV of the Amended Complaint fails as a matter of law.

## CONCLUSION

Accordingly, the Court, having considered all relevant pleadings, including but

not limited to the Converted Motion, Supplement, Response, Joint Stipulation, Reply, all supplemental briefing submitted by Plaintiffs and Defendants, the record of this Adversary Proceeding, the record of the related bankruptcy cases of both Defendants, and being otherwise fully advised in the premises, **ORDERS AND ADJUDGES** that:

1. The Court **GRANTS** summary judgment in favor of Defendant Batcheler as to Count IV of the Amended Complaint.

2. The Court reserves jurisdiction over all matters arising from or related to the interpretation or implementation of this Order.

### 

Copies Furnished To:

All interested parties by the Clerk of Court